NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIA MOLDERS, : : Plaintiff, : : v. : : NEW JERSEY EDUCATION : ASSOCIATION PRUPROTECT PLAN, : : Defendant. : : | Civ. No. 05-1747 (AET) **OPINION** |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court on (1) Plaintiff Maria Molders's motion for summary judgment, and (2) Defendant New Jersey Education Association Pruprotect Plan's amended motion for summary judgment. The Court has decided these motions after reviewing the submissions of the parties. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons stated below, Plaintiff's motion will be granted and Defendant's motion will be denied.

BACKGROUND

Plaintiff was employed by Bergen County Special Services as a Behavior Consultant until the end of December 2003, when she went on disability leave because of problems with her lower back, the cause of which are at the root of the present dispute. Soon thereafter, Plaintiff consulted with Dr. William L. Klemper, a neurosurgeon, who determined that she suffered from Lumbar Radiculopathy, Lumbar Spinal Stenosis, and Lumbar Lateral Recess Nerve Root Compression Syndrome. On January 23, 2004, Dr. Klemper performed surgery to ameliorate the

problem. Subsequently, Plaintiff filed a claim for long term disability benefits ("LTD benefits") through her employer's Long Term Group Disability plan, the New Jersey Education Association Pruprotect Plan (the "Plan"), issued by Defendant in conjunction with the New Jersey Education Association (the "NJEA"). Although the NJEA served as the administrator of the Plan, it delegated its responsibility for claims administration of its disability insurance programs to Defendant.

By letter dated March 12, 2004, Defendant denied Plaintiff's claim for LTD benefits under the Plan. Defendant justified its decision thusly:

> The information in your file indicates that you became disabled as of December 31, 2003. You were out of work due to Lower Back Pain and Radiculopathy. Your effective date of coverage for LTD coverage [sic] was **July 1, 2003**. Since you went out of work within one year of your coverage effective date, a pre-existing investigation [sic] was completed for the period of **April 1, 2003, through June 30, 2003**.
>
> After a review of the medical information in file, it was confirmed that you had been seen by Dr. Cheryl Rubin on April 9, 2003. During this office visit you were treated for Lower Back Pain and Radiculopathy. . . . Since you were treated for your condition during the three month period preceding your date of coverage, and you went out of work within the first year of being covered you are not eligible for LTD benefits. Therefore, we have disallowed your claim.

(Pl.'s Ex. B; Def.'s Ex. D) (emphasis in original).

Plaintiff appealed this unfavorable decision through Defendant's administrative review process, contending that the Lower Back Pain, Radiculopathy, and Degenerative Disk Disease for which she had received treatment from Dr. Rubin was an entirely distinct malady from the Lumbar Stenosis diagnosed by Dr. Klemper, for which she underwent surgery. Plaintiff maintained—and continues to maintain—that she went on disability because of Lumbar Stenosis, and that Defendant was incorrect to characterize that affliction as a pre-existing condition.

Plaintiff's administrative appeals were unavailing, however, and she received her final denial from Defendant on November 2, 2004.

Plaintiff filed the present action on April 1, 2005 claiming that she is entitled, pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover the LTD benefits wrongly denied her by Defendants. The present motions followed.

## SUMMARY JUDGMENT STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999). If the nonmoving party would bear the burden of persuasion at trial, the moving party may discharge this prima facie burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Padillas, 186 F.3d at 414 (quoting Celotex, 477 U.S. at 322). In evaluating the evidence, the Court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

## DISCUSSION

A.  Standard of Review Under ERISA

In evaluating a challenge under § 1132(a)(1)(B) to a denial of benefits under an ERISA

plan, the Court must, as a preliminary matter, determine the appropriate standard of review. Such a challenge "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where a benefit plan affords discretion to the administrator, the administrator's interpretation is reviewed under an arbitrary and capricious standard and "will not be disturbed if reasonable." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997) (quoting Firestone Tire & Rubber Co., 489 U.S. at 115).

Where an insurance company is both administrator and funder, however, the Third Circuit Court of Appeals has recognized that the potential for self-dealing "warrants that fiduciary insurer's decisions be closely inspected." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387-88 (3d Cir. 2000). To address the structural conflict of interest inherent in that arrangement, the Pinto court held that a "heightened arbitrary and capricious" standard of review is to be applied to benefits denials of insurance companies paying ERISA benefits out of their own funds. Id. at 390-93. Although a reviewing court is deferential in applying a heightened arbitrary and capricious review, it is not absolutely deferential, and "the greater the evidence of conflict on the part of the administrator, the less deferential [the] abuse of discretion standard." Id. The reviewing court looks "not only at the result—whether it is supported by reason—but at the process by which the result was achieved." Id. at 393.

In the present case, Defendant argues that the Court should apply an unenhanced arbitrary and capricious standard of review because Defendant "was neither the Plan Administrator or [sic] the Plan sponsor." (Def.'s Am. Br. in Supp. of Am. Mot. for Summ. J. 12.) Plaintiff concedes

that this is so, but responds that a heightened arbitrary and capricious standard should apply under Pinto because Defendant both determined eligibility for LTD benefits under the Plan and paid for those benefits out of its own funds.  (Pl.'s Mem. in Further Supp. of Pl.'s Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J. 2.)  The Court finds Plaintiff's argument compelling.  The Court acknowledges the complex nature of the relationship between Defendant and the NJEA, but notes that Defendant does not dispute that it was responsible for both the administration and the funding of benefits claims, the exact type of structural conflict of interest that the Pinto court sought to address.  Accordingly, the Court will review Defendant's denial of Plaintiff's LTD benefits claim under a heightened arbitrary and capricious standard.

      Having determined that a heightened arbitrary and capricious standard is appropriate, the Court must next determine what "degree of scrutiny" to apply under that standard.  Pinto, 214 F.3d at 379.  In Pinto, the Third Circuit applied a review "on the far end of the arbitrary and capricious range" because of various procedural anomalies that led the insurer defendant, "whenever it was at a crossroads, [to choose] the decision disfavorable to [the plaintiff]."  Pinto, 214 F.3d at 394.  See also Kosiba v. Merck & Co., 384 F.3d 58, 64-65 (3d Cir. 2004) (explaining the heightened standard applied in Pinto).  In the present case, Plaintiff has neither alleged the existence of, nor provided evidence of, any procedural anomalies akin to those in Pinto.  In their absence, the Court will apply a slightly heightened arbitrary and capricious standard of review.

B.     Pre-Existing Condition

      In her motion for summary judgment, Plaintiff argues that Defendant erred in denying her claim for LTD benefits based on the existence of a pre-existing condition.  Plaintiff contends that Defendant, in doing so, incorrectly conflated Degenerative Disk Disease and Spinal Stenosis, the

two distinct conditions from which she suffered. Defendant responds that it was correct to apply the pre-existing condition limitation because Plaintiff's medical records indicated that for a period of approximately one year Plaintiff had consistently suffered from "symptoms of low [sic] back pain with radiation in the right lower extremity" and that, although "plaintiff's diagnosis may have changed or been clarified with the ongoing treatment, the condition that led her to go out from work was the same as the condition for which she was treated during the pre-existing condition period, lower back pain." (Def.'s Letter Br. 5, Mar. 31, 2006.)

The Third Circuit has drawn a distinction between pre-existing condition cases involving a "misdiagnosis" or an "unsuspected condition manifesting non-specific symptoms" and those involving a "suspected condition without confirmatory diagnosis." McLeod v. Hartford Life & Acc. Ins. Co., 372 F.3d 618, 628 (3d Cir. 2004). A condition in the former category, i.e., one that was neither diagnosed nor suspected in the pre-existing condition period, cannot be deemed pre-existing, "especially in a situation . . . where other diagnoses were made as to the very symptoms that are now being attributed to the (alleged) pre-existing condition." Id. at 624. The McLeod court explained:

> It is simply not meaningful to talk about symptoms in the abstract: Seeking medical care of a symptom of a pre-existing condition can only serve as the basis for exclusion from receiving benefits in a situation where there is some intention on the part of the physician or the patient to treat or uncover the underlying condition which is causing the symptom.

Id. at 628.

In the present case, Defendant does not dispute Plaintiff's assertion that Lumbar Radiculopathy and Degenerative Disk Disease are distinct conditions from Spinal Stenosis. Instead, Defendant asserts that its treatment of Plaintiff's Spinal Stenosis as a pre-existing

condition cannot be considered arbitrary and capricious because "[Plaintiff's] symptomology was the same and consistent with the eventual surgery." (Def.'s Letter Br. 5, Mar. 31, 2006.) Yet, while Defendant does not dispute that it bears the "burden to establish that the preexisting condition limitation applies to plaintiff's claim" (Def.'s Letter Br. 2, n.1, Mar. 31, 2006), it neither contends nor presents evidence to show that Dr. Rubin had any intention "to treat or uncover" Plaintiff's Lumbar Stenosis on April 9, 2003. See McLeod, 372 F.3d at 628. Because Dr. Rubin's diagnosis of Lumbar Radiculopathy and Degenerative Disk Disease was "made as to the very symptoms that are now being attributed to" Plaintiff's Lumbar Stenosis, see id. at 624, Defendant was incorrect to treat Plaintiff's Lumbar Stenosis as a pre-existing condition. Thus, the Court holds that Defendant's decision to deny Plaintiff's claim for LTD benefits was arbitrary and capricious.

C.   Remedy

Having found that Defendant's decision to deny Plaintiff's claim was arbitrary and capricious, the Court must next fashion an appropriate remedy. The Court has discretion in so doing, and may either remand the case for a re-evaluation of the claim or retroactively award benefits. See, e.g., Addis v. Ltd. Long-Term Disability Program, 425 F. Supp. 2d 610, 620 (E.D. Pa. 2006).

The parties do not dispute that further administrative proceedings are required to determine whether Plaintiff was disabled within the meaning of the Plan during the "any occupation" period of January 1, 2006 through the present. Plaintiff argues, however, that the Court is currently "in a position" to determine whether she is entitled to LTD benefits for the "own occupation" period of January 1, 2004 through December 31, 2005. (Pl.'s Mem. in Reply

to Def.'s Resp. to Pl.'s Mot. for Summ. J. 8.)  Defendant responds, correctly, that there has been no administrative determination of whether Plaintiff was disabled under the plan during either period.

The Court finds that further administrative proceedings are necessary to determine whether and, if so, for what period Plaintiff was disabled within the meaning of the Plan. Defendant is cautioned, however, that the Court has not decided the question of whether Defendant has already waived its right to deny Plaintiff's claim for the "own occupation" period. See, e.g., McLeod v. Hartford Life & Acc. Ins. Co., No. Civ. A. 01-4295, 2004 WL 2203711, at *1-3 (E.D. Pa. Sept. 27, 2004).  That issue will be addressed, if necessary, should Plaintiff appeal from Defendant's administrative determination.

## CONCLUSION

For the foregoing reasons, Plaintiff Maria Molder's motion for summary judgment will be granted and Defendant New Jersey Education Association Pruprotect Plan's amended motion for summary judgment will be denied.  An appropriate Order accompanies this Opinion.

                                                           s/Anne E. Thompson
                                                    ANNE E. THOMPSON, U.S.D.J.

Dated: 7/18/06